The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JENNIFER MILLER, et al.,

    Plaintiffs,

v.

AMAZON.COM, INC., et al.,

    Defendants.

Civil Action No. 2:21-cv-00204-BJR

ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

### I.    INTRODUCTION

Thirteen Plaintiffs who served as delivery drivers for Defendants Amazon.com and Amazon Logistics (together, "Amazon") filed this lawsuit claiming that Defendants unlawfully withheld portions of their drivers' tips, in violation of the Washington Consumer Protection Act. Dkt. 35. Defendants filed a motion to compel arbitration, claiming that Plaintiffs' contracts require that this dispute be resolved by an arbitrator. Dkt. 40. Having reviewed the motion, the record of the case, and the relevant legal authorities, the Court will deny Defendants' motion to compel arbitration. The reasoning for the Court's decision follows.

## II.     BACKGROUND

For varying periods between 2015 and 2021, Plaintiffs worked as delivery drivers through Defendants' "Amazon Flex" program. Dkt. 35 ¶ 2. Amazon Flex is a program by which Defendants engage drivers as independent contractors to make two broad categories of deliveries using their personal vehicles: (1) delivery of items from grocery stores, restaurants, and other local businesses (know as "Global Specialty Fulfillment" ("GSF") deliveries) and (2) delivery of packages from Amazon fulfillment centers that customers ordered from Amazon's website (known as "AMZL" deliveries). Dkt. 41, ¶¶ 46, 48.[1] In making AMZL deliveries, Amazon Flex drivers supplement traditional parcel-delivery carriers like FedEx and UPS in performing what are referred to as "last-mile" deliveries—the final and relatively short segments of shipments that very often originate out of state. *See id.* ¶ 5. Drivers are eligible for customer tips on GSF deliveries, but not on AMZL deliveries. *Id.* ¶¶ 47, 49; *see also e.g.*, Dkt. 42-1 ¶ 9.

Amazon Flex does not require drivers to make a certain number of (or any) deliveries; rather, drivers sign up to make individual deliveries by reserving a particular "delivery block" in the Amazon Flex app. *Id.* ¶ 6, Dkt. 41-1 at 2. Participants may elect to make GSF deliveries, AMZL deliveries, or both. Dkt. 41 ¶ 51; *see also e.g.*, Dkt. 42-1 ¶ 7. It appears that one or more Plaintiffs exclusively made GSF deliveries.[2] As Plaintiffs are claiming that Defendants withheld tips, and only GSF deliveries are eligible for tips, the Court assumes that all Plaintiffs made at least

---

[1] Facts taken from Defendants' supporting declaration (Dkt. 41) are not disputed.

[2] Defendants' supporting declaration states that "some delivery partners have scheduled GSF delivery blocks exclusively" but does not clarify whether "delivery partners" refers to Plaintiffs or to Amazon Flex drivers generally. *See* Dkt. 41 ¶ 51.

some GSF deliveries.

In order to use the Amazon Flex app, participants must create an account and agree to the Amazon Flex terms of service ("TOS"). Dkt. 41 ¶ 7. Although there are three different versions of the TOS at issue in this case, they all contain a nearly identical arbitration provision. *See id.* ¶ 10; Dkt. 40 at 5-6. In order to create an account and become an Amazon Flex driver, participants "had to click twice on buttons stating 'I AGREE AND ACCEPT.' The first time was to accept the TOS, and the second was to specifically accept the arbitration provision of the TOS, which is on the first page of the TOS and in Section 11." *Id.* ¶ 10. In the version of the TOS that was operative from 2016 to 2019 (the "2016 TOS"), the arbitration provision reads:

> SUBJECT TO YOUR RIGHT TO OPT OUT OF ARBITRATION, THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM OR TO YOUR PERFORMANCE OF SERVICES. TO THE EXTENT PERMITTED BY LAW, THE PRECEDING SENTENCE APPLIES TO ANY DISPUTE OR CLAIM THAT COULD OTHERWISE BE ASSERTED BEFORE A GOVERNMENT ADMINISTRATIVE AGENCY.

Dkt. 41-1 at ECF 6. The wording of this provision in the versions of the TOS introduced in 2019 (the "2019 TOS") and 2021 (the "2021 TOS") is slightly different, but the parties agree that its effect is the same.[3] Plaintiffs all had to accept the arbitration provision in order to finish creating

---

[3] The 2019 and 2021 TOS arbitration provisions read:

> THE PARTIES WILL RESOLVE BY FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT OR TRIAL BY JURY, ANY DISPUTE OR CLAIM, WHETHER BASED ON CONTRACT, COMMON LAW, OR STATUTE, ARISING OUT OF OR RELATING IN ANY WAY TO THIS AGREEMENT, INCLUDING TERMINATION OF THIS AGREEMENT, TO YOUR PARTICIPATION IN THE PROGRAM, OR TO YOUR PERFORMANCE OF SERVICES. TO THE EXTENT PERMITTED BY LAW, THE PRECEDING SENTENCE APPLIES TO ANY DISPUTE OR CLAIM THAT OTHERWISE COULD BE ASSERTED

their Amazon Flex accounts.[4]

The 2016 TOS contained a modification provision that ostensibly gave Defendants the ability to update the terms in the 2019 and 2021 TOS.[5] The provision clarifies that "any modifications to [the arbitration provision] will not apply to claims that accrued or to disputes that arose prior to such modification." *Id.* at ECF 8. According to Defendants, and not disputed by Plaintiffs, Amazon sent Plaintiffs emails in 2019 and 2021 indicating that it had modified the TOS and reiterating that Plaintiffs' continuing to use the Amazon Flex app would signify acceptance of the modifications. Dkt. 41 ¶¶ 41, 43-44. Eleven Plaintiffs continued to use the app after being notified of the 2019 TOS, and two Plaintiffs continued to use the app after being notified of the 2021 TOS. *Id.* ¶¶ 28, 42. The only relevant modification Amazon made in these later versions of the TOS was to the choice-of-law provision.[6] The 2016 TOS states that it is governed by

---

BEFORE A GOVERNMENT ADMINISTRATIVE AGENCY.

Dkt. 41-1 at ECF 7; Dkt. 41-3 at ECF 7.

[4] The 2016 TOS allowed Plaintiffs to opt out of arbitration by sending an email to an address specified in the contract within two weeks of accepting the TOS. *Id.* at ECF 7. No Plaintiff claims to have opted out. *See* Dkt. 42, Exhs. 1-7.

[5] The modification provision states:

> Amazon may modify this Agreement, including the Program Policies, at any time by providing notice to you through the Amazon Flex app or otherwise providing notice to you. You are responsible for reviewing this Agreement regularly to stay informed of any modifications. If you continue to perform the Services or access Licensed Materials (including accessing the Amazon Flex app) after the effective date of any modification to this Agreement, you agree to be bound by such modifications.

Dkt. 41-1 at ECF 7.

[6] As Defendants point out, the 2019 and 2021 versions of the TOS also changed the delegation provision of the arbitration agreement to require the parties to arbitrate questions of arbitrability. *See* Dkt. 40 at 6; Dkt. 41-2 at ECF 8; Dkt. 41-3 at ECF 8. The 2016 TOS stated that arbitrability disputes would be resolved by a court. Dkt. 41-1 at ECF 7. However, Defendants do not argue that that provision applies to this case or that the Court lacks the power to determine arbitrability.

Washington law, except for the arbitration provision, "which is governed by the Federal Arbitration Act and applicable federal law." Dkt. 41-1 at ECF 7.  In contrast, the 2019 and 2021 versions of the TOS select Delaware law to govern the contract generally.  Dkt. 41-2 at ECF 8-9; Dkt. 41-3 at ECF 9.  Although the 2019 and 2021 choice-of-law provisions also contained an exception for the arbitration provision, both specifically state that "[i]f, for any reason, the Federal Arbitration Act is held by a court of competent jurisdiction not to apply to Section 11, the law of the state of Delaware will govern Section 11 of this Agreement."  Dkt. 41-2 at ECF 8-9; Dkt. 41-3 at ECF 9.

### III.   DISCUSSION

Defendants have moved to compel arbitration, citing the agreement Plaintiffs accepted as part of the Amazon Flex terms of service. Dkt. 40.  Defendants assert that the Federal Arbitration Act ("FAA") applies to their contracts with Plaintiffs and compels arbitration, and that, even if the FAA does not apply, state law applies and also compels arbitration.  *Id.*  Plaintiffs counter that neither the FAA nor any state law applies to the relevant terms of service, and that the arbitration provision is invalid.  Dkt. 42.  The Court will first address the FAA.

**A. Applicable Law**

   **1. The Federal Arbitration Act**

The FAA states that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Act was passed in 1925 at a time when courts were hostile to arbitration, and thus it represents a "national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443

(2006).  However, the FAA exempts certain employment contracts.  Specifically, the FAA "[does not] apply to contracts of employment of seamen, railroad employees, or," most germane to this case, "*any other class of workers engaged in foreign or interstate commerce*."  9 U.S.C. § 1.

Whether Plaintiffs' contracts are exempt from the FAA depends on whether Plaintiffs qualify as a "class of workers engaged in . . . interstate commerce."  Making this determination involves looking at the "inherent nature of the work performed," as illustrated by their job description or primary duties.  *Capriole v. Uber Technologies, Inc.*, 7 F.4th 854, 865 (9th Cir. 2021); *Rittman v. Amazon, Inc.*, 971 F.3d 904, 911 (9th Cir. 2020).  If interstate commerce is a "central part of the [workers'] job description," as opposed to being merely incidental or "tangentially related" to their responsibilities, then the employee falls within the exemption.  *Capirole*, 7 F.4th at 865 (first quote); *Rittman*, 971 F.3d at 911 (second quote) (citation omitted).  Courts also weigh other factors, such as whether the business or entity for which the employee works is clearly engaged in interstate commerce, and whether a strike by the class of workers at issue would disrupt interstate commerce.  *See In re Grice*, 974 F.3d 950, 956 (9th Cir. 2020); *Lenz v. Yellow Transp., Inc.*, 431 F.3d 348, 352 (8th Cir. 2005).

The analysis does not focus on whether individual plaintiffs themselves actually engaged in work affecting interstate commerce, but rather whether the class of workers to which they belong, based primarily on their job description, generally engages in that type of work.  *In re Grice*, 974 F.3d at 956; *Capirole*, 7 F.4th at 861-62.  For example, "a truck driver for an interstate trucking company may be exempt even if the particular trucker only occasionally . . . crosses state lines."  *In re Grice*, 974 F.3d at 956 (citations omitted).

Importantly, the nature of the claims or controversies in a particular case is *not* relevant to ascertaining whether a claimant belongs to an exempt class of workers.  For example, if a railroad

6

conductor who transported passengers across state lines brought sexual harassment claims based on events that took place in the railroad company's corporate office, the conductor would be exempt from the FAA as a transportation worker. Although neither the locus nor the nature of the claims implicates interstate commerce, the nature of a railroad conductor's job does, and thus disputes arising out of his or her employment contract would be exempt. *See generally Palcko v. Airborne Express, Inc.*, 372 F.3d 588 (3d Cir. 2004) (finding that transportation worker who brought gender discrimination claims was part of an exempt class of workers).

### 2. The Rittman Decision

In the 2020 case *Rittman v. Amazon, Inc.*, the Ninth Circuit considered whether a group of Amazon Flex drivers belonged to a class of workers engaged in interstate commerce and were thus exempt from the FAA. *See generally* 971 F.3d 904. The facts and applicable law in *Rittman* are very similar to those at issue here, but the parties disagree on whether the differences between the two cases are legally significant.

*Rittman* dealt with Amazon Flex drivers using the same app and agreeing to the same contract—specifically, the 2016 TOS—as Plaintiffs here. *See id.* at 907-08. Neither the 2019 nor the 2021 TOS was at issue. *See id.* Like Plaintiffs, the drivers in *Rittman* had the option of performing GSF deliveries, AMZL deliveries, or both, and several drivers did indeed perform both. *See id.* at 937-38 (Bress, J., dissenting) (citing party declarations). However, their claims were not related to tips and not specific to tip-eligible GSF deliveries, and Amazon's argument in favor of FAA coverage did not center on the local nature of those deliveries, as it does here. *See id.* at 907-08; *Rittman v. Amazon, Inc.*, 383 F.Supp.3d 1196, 1199 (W.D. Wash. 2019). Rather, the defendants argued that intrastate AMZL deliveries from Amazon warehouses did not implicate the FAA's interstate-commerce exemption because the drivers did not cross state lines in making those

deliveries. *See generally id.* ECF No. 103. The court disagreed and found that, even though the drivers did not cross state lines, they were still exempt from the FAA. *Rittman*, 971 F.3d at 909, 918-19. The majority reasoned that "[Amazon Flex] drivers' transportation of goods wholly within a state are still a part of a continuous interstate transportation, and those drivers are engaged in interstate commerce for § 1's purposes." *Id.* at 916.

Notably, the court "agree[d] with the district court that cases involving food delivery services like Postmates or Doordash are . . . distinguishable." *Id.* (citing cases involving those and other services). Locally prepared restaurant meals "are not a type of good that are indisputably part of the stream of commerce." *Id.* (citation omitted). The parties never mentioned that Amazon Flex drivers could, and often did, make these same types of local food deliveries, in addition to the last-mile deliveries the court considered part of interstate commerce,[7] and the majority did not address the issue. *See id.* at 916-17; *Rittman*, C16-1554-JCC, ECF Nos. 36, 46, 68, 103, 104, 107, 108; *see also id.* at 937-38 (Bress, J., dissenting).

**B. Plaintiffs' Amazon Flex Contracts Are Exempt from the FAA**

Plaintiffs argue that *Rittman* squarely applies to this case, whereas Defendants contend that the different facts and claims at issue distinguish it. Plaintiffs' primary argument is that, although last-mile AMZL deliveries are not the subject of Plaintiffs' complaint, *Rittman* nevertheless considered the same class of workers at issue in this case—namely, Amazon Flex delivery drivers. Defendants, in contrast, urge the Court to define the class to include only Amazon Flex drivers

---

[7] In fact, the plaintiffs in *Rittman* went as far as claiming "Amazon drivers are not delivering prepared meals from local restaurants but instead perform 'last-mile' delivery of packages." *Rittman*, C16-1554-JCC, ECF No. 104 at 10. However, Judge Bress's dissent noted that Amazon Flex allows drivers to perform local deliveries and that several of the plaintiffs' declarations confirmed that they had in fact delivered from local restaurants. 971 F.3d at 937-38.

8

performing local GSF deliveries.  If the Court were to accept that definition, Defendants argue that the Ninth Circuit (following *Rittman*) would find GSF deliveries more akin to food delivery services like Postmates or Doordash and thus not part of interstate commerce.

The Court recognizes that the structure of the Amazon Flex program makes ascertaining the job description or duties of Amazon Flex drivers more complicated than it would ordinarily be.  Drivers are not required to choose between making AMZL (part of interstate commerce) or GSF (purely local) deliveries, and certain Plaintiffs made no AMZL deliveries at all.  Thus, it could be argued (and was indeed argued by defense counsel during oral argument) that the job description of an Amazon Flex driver to some extent depends on choices made by individual drivers.

However, as previously stated, the work actually performed by Plaintiffs is not relevant to defining the class of workers to which they belong.  Furthermore, the FAA exemption applies to "contracts of employment," and the Court must determine whether the Amazon Flex contract, not individual Amazon drivers, is exempt.  Amazon has one contract under which drivers can perform both GSF and AMZL deliveries.  Therefore, the contract contemplates both local and interstate activities as part of drivers' job description, even if some drivers do not actually perform AMZL deliveries.  Defining Amazon Flex drivers as a class of workers engaged only in local GSF deliveries, and thus not exempt from the FAA, would essentially be redrawing the contract to exclude drivers' exempt activities.  If this were the result Amazon had wanted, it could easily have used two different contracts for its drivers—one for AMZL deliveries and one for GSF deliveries.  Then, only the GSF contract would be before the Court, and those who had agreed to it would not have been engaged in interstate commerce.  However, Amazon made a business decision to use one contract and enable drivers to perform both types of delivery, thereby maximizing Amazon's

pool of potential workers to perform whichever of the two was most in demand at a particular time. In other words, by using a single contract, Amazon itself defined the class of Amazon Flex workers as encompassing both interstate and local activities. Defendants cannot now effectively split the contract in two because it serves their interests in this case. Accordingly, the Court finds that Plaintiffs' contract covers workers who do both interstate and locals deliveries and thus falls within *Rittman*'s holding that Plaintiffs' job description renders them exempt.

Defendants' arguments to the contrary are based on the assertion that the claims or controversies at issue in a particular case must play some role in how a class of workers is characterized for purposes of the FAA. *See* Dkt. 40 at 10 ("*Rittman*'s rationale is necessarily inapplicable here given the nature of Plaintiffs' claims."). However, none of the cases cited in Defendants' briefs support that assertion, and the Court's own research indicates that the nature of a plaintiff's claims is not what defines a class of workers for purposes of the FAA. Therefore, the fact that Plaintiffs' claims relate only to local GSF deliveries is not determinative. Plaintiffs' job description under the contract, which includes both AMZL and GSF deliveries, is what is determinative.

Other factors weigh in favor of finding Plaintiffs' contracts exempt from the FAA. For one, Amazon holds itself out as a company that can quickly ship products throughout the country and thus is an entity engaged in interstate commerce. *See Rittman*, 971 F.3d at 915. Furthermore, a strike by Amazon Flex workers would cause disruptions not only to Amazon's local delivery service but also its interstate package delivery, as many drivers make at least some AMZL deliveries. Therefore, all of the factors relevant here indicate that Amazon Flex drivers as a class are engaged in interstate commerce, and the Court finds Plaintiffs' contracts are exempt from the FAA.

### C. No State's Law Applies to the Arbitration Provision

The court in *Rittman*, after finding that the FAA did not apply to the 2016 TOS arbitration provision, determined that no other federal or state law applied, and thus that the provision was invalid and unenforceable. *Rittman*, 971 F.3d at 919-21. While, the 2016 TOS states that the "FAA and applicable federal law" applies to the arbitration provision, the *Rittman* court held that there is no "applicable federal law" apart from the FAA. *Id.* at 919. Additionally, the 2016 choice-of-law provision makes clear that Washington law does not apply to the arbitration provision, and it contains no substitute in the event the FAA does not apply. *Id.* at 920-21.

Although it is undisputed that *Rittman* is controlling as to the 2016 TOS, Defendants assert that the 2016 TOS is not the operative contract in this case. Dkt. 40 at 11-13. Rather, Defendants argue that the Court should look to the 2019 and 2021 TOS, both of which substitute Delaware law in the event the FAA does not apply. *Id.* However, Plaintiffs clarified in their opposition brief that all of their claims accrued before the 2019 TOS became effective in November 2019. Dkt. 42 at 13. Defendants call this a "striking concession" but do not contest it. Dkt. 43 at 4. Defendants also do not claim that the 2019 TOS applies retroactively, nor could they, as the contract does not contain a provision to that effect. *See* Dkt. 41-1. Defendants' repeated arguments that Amazon properly modified the TOS in 2019 and 2021 according to the contract's modification provision is inapposite. *See* Dkt. 40 at 12; Dkt. 43 at 4-6. The modifications, even if valid, do not alter the fact that the 2016 TOS was the operative contract at all relevant times.

Therefore, as neither the FAA nor any state's law applies to the arbitration provision in the 2016 TOS, the Court finds that the provision is invalid and unenforceable, and thus the Court will not compel arbitration.

## IV.    CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' motion to compel arbitration (Dkt. No. 40).

DATED this 9th day of December, 2021.

                                                                         _____
                                                                         BARBARA J. ROTHSTEIN
                                                                         UNITED STATES DISTRICT JUDGE