1

2
THE HONORABLE BARBARA J. ROTHSTEIN

3

4

5

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
8

9
CHRISTOPHER CAIN, JOSE GRINAN,
KIMBERLY HALO,
10
KELLY KIMMEY, JUMA LAWSON,    NO. 2:21-cv-00204-BJR
SHARON PASCHAL, and
11
PHILIP SULLIVAN, on behalf of themselves    **PLAINTIFFS' MOTION FOR CLASS**
and all others similarly situated    **CERTIFICATION AND**
12    **MEMORANDUM IN SUPPORT**
**THEREOF**
13                    Plaintiffs,

14        v.

15    AMAZON.COM, INC., and
AMAZON LOGISTICS, INC.,
16
                    Defendants.
17

18                        **INTRODUCTION**

19        This case concerns an "outrageous" "bait-and-switch"[1] that Defendants ("Amazon") used

20    "to pocket more than $60 million in … tips"[2] from over 150,000 delivery drivers throughout the

21    United States. Plaintiffs filed this action on behalf of those drivers to recover statutory damages

22    and interest from Amazon under the Washington Consumer Protection Act ("WCPA"), RCW

23    19.86, *et seq.* Pursuant to Fed. R. Civ. P. 23, they now ask the Court to certify the following class:

24

25    [1] (Federal Trade Commission [2021, Feb. 10]. "Amazon Flex; Analysis of Proposed Consent
Order to Aid Public Comment," 86 Fed. Reg. 26, p. 8912 ["FTC Analysis"] ["**Ex. 1**"]).
26

27    [2] (FTC Analysis [**Ex. 1**], p. 8912).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1

2

> All individuals who performed tipped delivery services using Amazon Flex for Defendants Amazon.com, Inc. and Amazon Logistics, Inc., anywhere in the United States between January 2017 and August 2019.[3]

3

4

5

6

7

The Court should grant that request because this case presents a common challenge to a common practice on behalf of a "cohesive group of individuals [who] suffered the same harm in the same way" due to a "company's mass marketing efforts." *In re Hyundai & Kia Econ. Litig.*, 926 F.3d. 539, 559 (9th Cir. 2019). As such, it is "particularly well suited to class treatment." *DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024).

8

9

10

11

12

13

14

15

In late 2015, Amazon launched a delivery service called "Amazon Flex." To make the program work, Amazon needed delivery drivers—a lot of them. So, it deployed a classic double-cross. First, it advertised that anyone who made deliveries using Amazon Flex would receive above-market compensation: at least $18 per hour in "base pay" plus "100%" of any tips from customers. Then, Amazon secretly reduced the drivers' base pay and used their tips to subsidize the amounts it paid them "out of pocket."[4] As a result, the drivers received less compensation overall while Amazon quietly saved tens of millions of dollars in base pay. At the same time, aware that it had created a ████████████,"[5] Amazon took "elaborate steps to … conceal its theft."[6]

16

17

18

19

20

21

The scheme worked. Between January 2017 and August 2019, Amazon used about one-third of all tips from customers—totaling some $61 million—to partially fund the base payments it owed the drivers. All the while, it obfuscated what was really going on behind a smokescreen of ambiguous and misleading representations. Tellingly, Amazon did not end its deception until approximately three months into an investigation of this very practice by the Federal Trade

22

23

[3] As discussed below, these dates correspond with the dates during which the challenged practice occurred.

24

25

[4] In other words, rather than continuing to pay the drivers $18 per hour with 100 percent of tips "on top," Amazon paid the drivers a reduced hourly rate ($15 per hour on average) and used customers' tips to "make up" the difference.

26

[5] (Questions e-mail [AMZN-MILLER-4146] [**Ex. 33**], p. 1).

27

[6] (FTC Analysis, **Ex. 1** at 8912).

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  Commission ("FTC"). At that point, Amazon reverted its compensation policy to ensure that DPs

2  would receive "100%" of tips on top of their hourly base payments. But it would be another two

3  years before Amazon paid back the tips that it had misappropriated.

4      Plaintiffs filed this action before any driver—whom Amazon calls "delivery partners," or

5  "DPs"—received even a dollar in restitution for Amazon's unfair and deceptive conduct. Plaintiffs

6  allege that Amazon violated the WCPA in two ways: first, by deceptively using tips to subsidize

7  the difference between the base payments it had promised the DPs and the reduced payments it

8  actually made starting in January 2017, while attempting to hide that fact from DPs and the public

9  (Count I); and second, by unfairly and deceptively representing that it would "pass along" "100%"

10  of customer tips to DPs in addition to their base rates (Count II). Both claims are amply suited to

11  class treatment. Accordingly, Plaintiffs respectfully request that the Court grant this Motion.

12                              **STATEMENT OF FACTS**

13  **I.    Amazon Logistics and the birth of "Amazon Flex."**

14      Starting in about 2014, Amazon sought to establish an "███████████████████"—

15  Amazon Logistics, or AMZL—to "████████████████." (Eric Rimling Tr. ["Rimling Tr."] [**Ex.**

16  **2**], 43:9-14). "Amazon Flex" emerged as part of this initiative: a "█████████," ███████████

17  ████████████████" where drivers, using their personal vehicles, ████████████████████

18  ████████████████████████████████████████████████████████████."

19  (Rimling Tr. [**Ex. 2**], 22:5-9; Amazon Flex 2015 Results and 2016 Plans [AMZN-MILLER-

20  307616] ["2015 Results"] [**Ex. 3**]). In September 2015, Amazon tested Flex in Washington to

21  determine, *inter alia*, if it could ███████████████████████████████████ █████

22  ████████████████████████████ (2015 Results [AMZN-MILLER-307616] [**Ex.**

23  **3**], p. 2). The test proved successful, prompting Amazon to expand Flex nationwide starting in

24  November 2015. (Amazon Flex Peak Staffing Plan [AMZN-MILLER-278991] ["Peak Staffing

25

26  ───────────────

27  [7] Amazon refers to carriers like FedEx and UPS as "delivery service partners" or "DSPs."

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 3

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  Plan"] [**Ex. 4**]), p. 1; Amazon Flex Overview and 2016 Plans [AMZN-MILLER-307225] ["2016

2  Plans"] [**Ex. 5**], p. 2).

3  **II.    The plan: recruit drivers with promises of competitive pay.**

4         To make Flex work, Amazon needed to █████████████████████████████████

5  ███████████████████████████████████████████████ (2016 Plans [AMZN-

6  MILLER-307225] [**Ex. 5**], p. 1). This was easier said than done because many drivers already

7  worked for multiple "gig economy" services and ████████████████ to any company. (US

8  Amazon Flex Driver Experience Key Findings [AMZN-MILLER-313945] ["Key Findings"] [**Ex.**

9  **6**], § 3). To overcome this problem, Amazon implemented a █████████████████████████

10 ██████████████████████████████—above-market compensation. ("PLEASE READ &

11 RESPOND" e-mail [AMZN-MILLER-283304] ["RESPOND e-mail"] [**Ex. 7**], p. 8; *see also* 2015

12 Results [AMZN-MILLER-307616] [**Ex. 3**], p. 1 ████████████████████████████████

13 ███████████████████████████████████████████████████████████████

14 ████████████████████). After some debate among the development team, Amazon's senior

15 vice-president of worldwide operations, David Clark, decided that Amazon would pay all DPs a

16 ███████████ of $18 per hour plus any tips from customers in order to ███████████████

17 ████████████████████ (RESPOND e-mail [AMZN-MILLER-283304] [**Ex. 7**], p. 2; *see also*

18 Rimling Tr. [**Ex. 2**], 38:65:8-10; Amazon's Second Supplemental Interrogatory Responses ["2d

19 Supp. Int. Resp."] [**Ex. 8**], No. 10; David Clark Tr. ["Clark Tr."] [**Ex. 9**], 38:14-39:4).

20        Amazon broadcast this compensation offer widely in an effort to reach as many prospective

21 DPs as possible, including through ██████████████████████████████████████████████

22 ███████████████████████████████████████████████████████████████

23 ███████████████████████████████████████████████████████████████

24 ██████████████████████ (Red-Line Amazon Flex 2015 Results and 2016 Plan [AMZN-

25 MILLER-307251] ["Red-Line 2015 Results"] [**Ex. 10**], p. 18). For example, Kelly Cheeseman,

26 Amazon's director of external communications, told a reporter that DPs would receive ████████

27 ████████████████████████ (Re: Amazon e-mail [AMZN-MILLER-284888] ["Re:

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 4

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  Amazon e-mail"] [**Ex. 11**], ¶ 4). Mr. Clark told the *Wall Street Journal* that Amazon ████

2  ████████████████████████████████████████████████████████████████████████

3  ███████████████████████████████████████ (Coverage Report e-mail [AMZN-

4  MILLER-288010] ["Coverage e-mail"] [**Ex. 12**], p. 5). A ████████████████████

5  advertised that DPs could ██████████████████████████ (Amazon Flex Jobs

6  Announcement PR Plan [AMZN-MILLER-284909] ["PR Plan"] [**Ex. 13**], p. 9). A █████

7  asserted that ████████████████████ (Amazon Flex PR Plan for Tier Two Cities

8  e-mail [AMZN-MILLER-1691] ["Tier Two e-mail"] [**Ex. 14**], p. 2). An automated response

9  system for online inquiries stated that DP ████████ was ████████ and that DPs would ████

10  ███ (Re: Contact Us e-mail [AMZN-MILLER-284871] ["Contact Us e-mail"] [**Ex. 15**], p. 11).

11  These offers had their intended effect: by late 2018, Amazon had recruited more than 250,000 DPs

12  to ████████████████████████████ (WW Amazon Flex: OP1 2019,

13  Business Review 8 August 2018 [AMZN-MILLER-295163] ["Business Review"] [**Ex. 16**] at p.

14  10, ¶ 2).

15  **III.  Amazon Flex reaches an inflection point.**

16        Although Flex was successful, Amazon knew the initial compensation structure for DPs

17  would be unsustainable; indeed, Mr. Clark considered it ██████████████ (Clark Tr. [**Ex. 10**],

18  75:13-76:5); *see also* Background Notes [AMZN-MILLER-310999] ["Background Notes"] [**Ex.**

19  **17**] [$18 per hour base rate for DPs meant Amazon was ███████████████████████

20  ███████). To keep the program "afloat," Amazon needed to keep DPs working while paying them

21  less out-of-pocket. That required Amazon to ███████████████████████████

22  ███████████████████████████████████ (Clark Tr. [**Ex. 10**], 75:13-

23  76:15). Amazon would accomplish this by developing a system that could ███████████████

24  ████████████████████████████████████ (Escalation e-mail [AMZN-

25  MILLER-285503] ["Escalation e-mail"] [**Ex. 18**]; Re: Options to base payout and tips e-mail

26  [AMZN-MILLER-298794] ["Options e-mail"] [**Ex. 19**], p. 6). As one senior Amazon developer

27  put it:

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairwork.com

[REDACTED]

(Options e-mail [AMZN-MILLER-298794] [**Ex. 19**], p. 6).

Amazon called this new, "dynamic" compensation system "variable base pay" ("VBP") or "regional base pricing" ("RBP"), among other things.[8] (Rimling Tr. [**Ex. 2**], 38:4-19; Amazon Flex Program Review—January 20, 2017 [AMZN-MILLER-307384] ["2017 Review"] [**Ex. 20**], p. 4). No matter what buzzwords Amazon used to describe the new system, however, or how sophisticated the technology it employed, the "solution" was old fashioned: Amazon would improve its bottom line by paying DPs less.

Amazon knew this was a risky move because some DPs might notice that they [REDACTED] [REDACTED] once dynamic pricing was in place. (Heads Up: Amazon Flex Pricing Changes e-mail [AMZN-MILLER-1695] ["Pricing Changes e-mail"] [**Ex. 21**]; *see also* Offers, Earnings and Regional Base Pricing Rollout [AMZN-MILLER-288419] ["Pricing Rollout"] [**Ex. 22**]). [REDACTED] one communications specialist for Amazon wrote, [REDACTED] [REDACTED] (Pricing Changes e-mail [AMZN-MILLER-1695] [**Ex. 21**], p. 1) (emphasis added). Dynamic pricing would reduce [REDACTED] (*Id.* [**Ex. 21**], p. 1). To [REDACTED] [REDACTED] (Pricing Rollout [AMZN-MILLER-288419] [**Ex. 22**], p. 4).

IV.    **Amazon implements dynamic pricing and quietly reduces the DPs' pay.**

Between January and February 2017, Amazon gradually reduced the base rate it paid DPs from $18 per hour to [REDACTED]

---

[8] For purposes of this Motion, Plaintiffs will refer to this system as "dynamic pricing."

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1   ████████████████████ (2d Supp. Int. Resp. [**Ex. 8**], No. 5; Pricing Changes e-mail [**Ex. 21**]

2   at p. 11). Once fully implemented, Amazon no longer paid the DPs "base pay" equal $18 per hour

3   plus all tips from customers "on top," as it had done in 2016. Instead, Amazon paid the DPs at

4   least $18 per hour, with a portion of that rate comprised of the tips which Amazon previously

5   "passed along" to the DPs *in addition* to their base pay. (*See* 2d Supp. Int. Resp. [**Ex. 8**], No. 5;

6   Options e-mail [AMZN-MILLER-298794] [**Ex. 19**], p. 6; 2017 Review [AMZN-MILLER-

7   307384] [**Ex. 20**], p. 4).

8           As a result of this change, a ███████ emerged within the Flex team: █████████

9   ████████████████████████████████████████████████████████████████████

10  (Business Review [AMZN-MILLER-295163] [**Ex. 16**] at p. 10, ¶ 2). Amazon's answer to that

11  question was "no." As one Amazon director explained in March 2017:

12  ████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████

15  ████████████████████████████████████

16  (RE: Tips for Prime Now e-mail [AMZN-MILLER-300256] ["Prime Now e-mail"] [**Ex. 23**]).

17  **V.      The cover-up.**

18          The ensuing cover-up was extensive. Amazon sent a mass e-mail to the DPs to ███████

19  ██████████████████████████████████████ (Pricing Rollout, AMZN-MILLER-

20  288419 [**Ex. 22**], p. 3). Yet that communication said nothing about any reduction in the base pay

21  DPs received from Amazon or Amazon's use of tips to subsidize their hourly pay. (*See id.* [**Ex.**

22  **22**], Appen. A). Amazon also developed ███████████████ for inquiries or complaints about

23  DP compensation. (*See id.* [**Ex. 22**] at pp. 1, 10). That document instructed Amazon's

24  representatives to inform DPs that they ████████████████████████████████████

25  ████████████████████████████████████████████████████████████████████

26  ███████████████, a statement that was patently false. (*Id.* [**Ex. 22**], p. 10).

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1        Amazon also took steps to ensure that DPs received as little information about their

2  earnings as possible. One Amazon user-interface designer wrote, ███████████████████

3  ███████████████████████████████████ (RE: Today's OBR Summary—more

4  VBP e-mail [AMZN-MILLER-300526] ["More VBP e-mail"] [**Ex. 24**], p. 1) (emphasis original).

5  Likewise, Amazon's in-app FAQs continued to state—as they had prior to Amazon's reduction in

6  DPs' base pay—that ███████████████████████████████████████

7  ██████████ (RE: Immediate Statement Approval e-mail [AMZN-MILLER-310477]

8  ["Approval e-mail"] [**Ex. 25**]; Amazon's Responses to Admission Requests ["Admission Resps."]

9  [**Ex. 26**], Nos. 6-10). Other communications reiterated this promise, stating that DPs ████

10 ██████████████████████████████████████████

11 (Admission Resps. [**Ex. 26**], Nos. 12-13). An ████████████████████ developed in July

12 2017 took this representation one step further, stating that DPs would receive ████████████

13 ███████████████████████████ (Review of Updated Earnings FAQ

14 Messaging e-mail [AMZN-MILLER-285030] ["FAQ Messaging e-mail"] [**Ex. 27**], p. 3).

15        Amazon also side-stepped direct inquiries from DPs with canned, ambiguous responses

16 about "variable base pay," but with no explanation as to what that meant. (*See* DP Contact

17 Spreadsheets [AMZN-MILLER-301795, 301797] ["Contact Spreadsheets"] [**Ex. 28**]). It provided

18 misleading assurances that its ███████████████████████████████

19 ███████████████████████████ even though this was inaccurate: Amazon's

20 commitment ***had*** changed from Amazon ***itself*** paying $18 per hour to Amazon subsidizing the $18

21 per hour rate with tips promised and owed to the DPs. (*See id.* [**Ex. 28**]).

22        In none of its communications did Amazon disclose that it had begun using DPs' tips to

23 subsidize Amazon's "guarantee" of the $18 per hour base rate. In March 2017, for example, the

24 company rolled out a supplemental FAQ for DPs concerning pay. (RE: Action Item e-mail,

25 AMZN-MILLER-284725 ["Action Item e-mail"] [**Ex. 29**]). That document purported to explain

26 how DP compensation had changed, but again, included no information about Amazon's use of

27 tips to subsidize the DPs' hourly rates. (*See id.* [**Ex. 29**], pp. 13-15, 21-23). Faced with the question,

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 8

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1                             Amazon dodged; its supplemental FAQ vaguely described how

2 dynamic pricing worked but made no mention of Amazon's decision to use DPs' tips as an offset

3 against its hourly pay commitments. (*Id.* [**Ex. 29**], pp. 6, 14, 22). Likewise, in response to the

4 question, ████████████████████████████████████████ Amazon provided no clear

5 answer: ███████████████████████████████████████████████████████

6 ███████████████████████████████████████████████████████████

7 ███████████████████████████████████████████████████████████

8 ███████████████████████ (*Id.* [**Ex. 29**], p. 7).

9         Amazon's obfuscation was so successful that it even confused Amazon's own

10 management. In August 2018, a senior product manager for Amazon described the situation as a

11 ████████ and acknowledged that the company's communications were problematic: ████████

12 ███████████████████████████████████████████████████████████

13 ████████████████████ (RE: DP delivers own IO and questions tip e-mail [AMZN-

14 MILLER-4164] ["Questions e-mail"] [**Ex. 30**]). Less than a year later, an Amazon's

15 communications director asked the Flex team: ███████████████████████████████

16 ████████████ (RE: Corporate Headlines e-mail [AMZN-MILLER-285212] ["Corporate

17 Headlines e-mail"] [**Ex. 31**]). That same month, Amazon considered changing its strategy, with

18 another manager writing: ███████████████████████████████████

19 ████████████████████████████████████████████████████ before

20 a member of Amazon's in-house legal team instructed her to stop using such ████████████

21 ████████ (Amazon Flex pricing transparency document, [AMZN-MILLER-291219] ["Pricing

22 Memo."] [**Ex. 32**], p. 4).

23        When media outlets contacted Amazon about DPs' pay and tips, the company closed ranks.

24 In response to a Buzzfeed reporter's question in February 2019 about whether Amazon used

25 ████████████████████████████████████████ the company responded

26 in its usual vague manner: ███████████████████████████████████████

27 ███████████████████████████████████████████████████████████

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  100% of tips—and on average drivers earn over $20/hour." (RE: FW: urgent inquiry from

2  buzzfeed news [AMZN-MILLER-1868] ["Buzzfeed e-mail"] [**Ex. 33**], p. 2). Internally, though,

3  Amazon knew it was only a matter of time before its deception was revealed,[9] with Ms. Cheeseman

4  noting that Buzzfeed was ████████████████████████████ (*Id.* [**Ex. 33**], p. 1).

5  **VI.    The FTC pulls back the curtain.**

6       In May 2019, the FTC informed Amazon that it was investigating the company's practices

7  with regards to DP compensation. (FTC Complaint [**Ex. 34**], ¶ 48). Barely two months later, in

8  August 2019, Amazon announced that it was changing policy: DPs would now receive between

9  $15 and $19 per hour as a "minimum contribution" from Amazon plus "100%" of tips on top of

10  those sums. (FTC Complaint [**Ex. 34**], ¶ 49; Re: Heads-up: Flex Announcement e-mail [AMZN-

11  MILLER-284045] ["Flex Announcement e-mail"] [**Ex. 35**], p. 4; Updated Earnings Experience

12  [AMZN-MILLER-1015] ["Updated Earnings Experience"] [**Ex. 36**], p. 1). The update even gave

13  an example:

14       if you see $36-50 for a 2-hour block, Amazon's contribution is $36. If you received
     no tips, your total earnings would be $36. If you received $5 in tips, your total
15     earnings would be $41. If you received $20 in tips, your total earnings would be
     $56.
16

17  (Updated Earnings Experience [AMZN-MILLER-1015] [**Ex. 36**], p. 4). Around the same time,

18  Amazon modified the Flex app so that it separately displayed the amounts paid directly by Amazon

19  and the amounts paid in tips by customers. (*See* FTC Complaint [**Ex. 34**], ¶ 49; Updated Earnings

20  Experience, [AMZN-MILLER-1015] [**Ex. 36**], p. 2).

21

22  _____

23  [9] By this point, Amazon was aware that certain gig economy competitors—Instacart and

24  DoorDash—had come under scrutiny for engaging in the same deceptive practice, i.e.,
   surreptitiously using tips to offset those companies' out-of-pocket payments to drivers. (Pricing

25  Memo., AMZN-MILLER-291219 [**Ex. 32**] at p. 3 ████████████████████████████
   ████████████████████████ Buzzfeed e-

26  mail, AMZN-MILLER-1868 [**Ex. 33**] at p. 3 ████████████████████████████
   ████████████████████████).

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

In February 2021, the FTC announced it had reached a deal with Amazon: Amazon would pay back more than $61 million to the DPs whose tips it had used to subsidize the base payments it had promised them, numbering some 152,000 individuals.[10] (Affidavit of Libbing Barrera-Perez ["Barrera-Perez Aff."] [**Ex. 37**], ¶ 5). The FTC characterized this result as "good," insofar as it ensured that the affected DPs would "get back every dollar that was promised, every dollar that a customer chose to give as a tip for their service." (FTC Analysis [**Ex. 1**], p. 8912). But as FTC also explained, "given the importance of candor and fairness to workers in the gig economy," Amazon's conduct warranted additional penalties—penalties which the FTC lamented it could not impose due to limitations on regulatory authority. (*Id.* [**Ex. 1**], p. 8912).

## LEGAL STANDARD

Federal Rule of Civil Procedure 23(a) requires that a proposed class first satisfy four threshold prerequisites: numerosity, commonality, typicality, and adequacy of representation. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013). If those prerequisites are met, the proposed class must then satisfy the requirements of Rule 23(b). *Id.* These include, for purposes of this action, that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). District courts are afforded "wide discretion" when deciding Rule 23 motions because they are often "in the best position to consider the most fair and efficient procedure for conducting any given litigation." *Bateman v. American Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2000) (internal quotation marks and citations omitted).

---

[10] Federal Trade Commission (2021, Feb. 2), Press Release: "Amazon to Pay $61.7 Million to Settle FTC Charges It Withheld Some Customer Tips from Amazon Flex Drivers," *available at:* https://www.ftc.gov/news-events/news/press-releases/2021/02/amazon-pay-617-million-settle-ftc-charges-it-withheld-some-customer-tips-amazon-flex-drivers.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1

## ARGUMENT

2   **I.    The class is too numerous for practicable joinder (numerosity).**

3           Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of all its

4   members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is "not tied to any fixed

5   numerical threshold," *Troy v. Kehe Food Distributors, Inc.*, 276 F.R.D. 642, 652 (W.D. Wash.

6   2011), though "40 or more members" will generally suffice, *Dunakin v. Quigley*, 99 F. Supp. 3d

7   1297, 1327 (W.D. Wash. 2015) (collecting cases). Here, the proposed class exceeds 150,000

8   individuals who reside throughout the United States. (Admission Resps. [**Ex. 26**], No. 4; Barrera-

9   Perez Aff. [**Ex. 37**], ¶ 5). Requiring joinder of even a fraction of that number is impracticable.

10  **II.   The class presents common issues of law and fact (commonality).**

11          Rule 23(a)(2) requires that there are "common questions of law or fact" among class

12  members. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the

13  class members have suffered the same injury" and that class treatment "will resolve an issue that

14  is central to the validity" of the plaintiffs' claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*,

15  564 U.S. 338, 350 (2011), *quoting General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147,

16  157 (1982). "In determining whether the 'common question' prerequisite is met," the Court should

17  focus on "whether the evidence establishes that a common question is *capable* of class-wide

18  resolution." *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651,

19  666-67 (9th Cir. 2022) (emphasis original). "The existence of shared legal issues with divergent

20  factual predicates is sufficient, as is the common core of salient facts coupled with disparate legal

21  remedies within the class." *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014),

22  *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

23          To establish liability under the WCPA, Plaintiffs must demonstrate five elements, all of

24  which depend upon common evidence and can be answered in common fashion: "(1) an unfair or

25  deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4)

26  injury to a person's business or property, and (5) causation." *Shields v. Fred Meyer Stores, Inc.*,

27

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 12

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  2024 WL 3511033, at *9 (W.D. Wash. Jul. 23, 2024), *quoting Panag v. Farmers Ins. Co. of Wash.*,

2  204 P.3d 885, 889 (Wash. 2009).

3  **1.    An unfair or deceptive act or practice.**

4  Plaintiffs can satisfy the first element "in a number of ways." *Greenberg v. Amazon.com,*

5  *Inc.*, 553 P.3d 626, 641 (Wash. 2024). First, they can show that Amazon's conduct was "per se"

6  unfair or deceptive because it violated a different statutory prohibition. *Id.* at 638. For example,

7  the Washington Business Opportunity Fraud Act, RCW 19.110.010, *et seq.*, declares it unlawful

8  for any person to make "any untrue or misleading statement of a material fact or to omit to state a

9  material fact in connection with the offer … of any business opportunity in the state" or to engage

10 in "any act, practice, or course of business which … would operate as a fraud or deceit upon any

11 person." RCW 19.110.120. Whether Amazon's representations meet this standard is an inquiry

12 common to every class member because it hinges on one party's conduct—Amazon's. *See Ruiz*

13 *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016) (commonality satisfied where

14 the "existence of a common policy of non-disclosure, and whether such non-disclosure constituted

15 false and misleading information, would 'drive the resolution' of the [WCPA] claims.").

16 Plaintiffs can also satisfy the WCPA's first element by showing that Amazon's conduct

17 was unfair, *Rush v. Blackburn*, 361 P.3d 217, 224 (Wash. App. 2015), as by demonstrating that it

18 occurred "in violation of public interest," *Greenberg*, 553 P.3d at 640-41. That inquiry will not

19 vary between class members. In another WCPA case involving a defendant's concealment of

20 information concerning paid work—*Ruiz Torres v. Mercer Canyons, Inc.*, 305 F.R.D. 646 (E.D.

21 Wash. 2015)—the district court held commonality satisfied because:

22  Whether Mercer Canyons had a policy or practice to withhold information
pertaining to H-2A jobs from job-seekers and current employees, and if so, whether

23  such withholding constituted providing false or misleading information concerning

24  the existence of, or terms and conditions of, jobs constitute common questions
shared by proposed class members regarding the inaccurate information claims

25  under the AWPA[11] and CPA. In other words, Plaintiffs may seek to demonstrate

26

27  [11] The Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 13

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1
2
3
     that Mercer Canyons had an obligation to provide information but instead had a policy to purposely avoid that obligation, and Plaintiffs may argue to the jury that the blanket policy of withholding this information from those who sought work was false or misleading.

4
*Id.* at 653.

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
     In addition, Plaintiffs can satisfy the WCPA's first element by establishing that Amazon acted deceptively, rather than unfairly—itself a common issue. The Washington Supreme Court has held that a defendant's "knowing failure to reveal something of material importance is 'deceptive' within the CPA." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 18 (Wash. 2017). This is an "objective inquiry," *State v. Mandatory Poster Agency, Inc.*, 398 P.3d 1271, 1274 (Wash. App. 2017), and one that raises many common questions. How did Amazon compensate DPs? Did Amazon change the DPs' compensation structure, and if so, how? How was that decision made, and by whom? Did Amazon fail to reveal that it was using customers' tips to subsidize the amounts it was paying DPs "out of pocket"? Was that failure knowing? Was it materially important? Were Amazon's representations likely to mislead a "reasonable" or "ordinary" consumer? *See Behnke v. Ahrens*, 294 P.3d 729, 736 (Wash. App. 2012) ("our Supreme Court has said that actionable deception exists where there is a practice likely to mislead a 'reasonable' or 'ordinary' consumer."). These inquiries depend upon common facts and can be answered in common fashion.[12] *See Taylor v. Universal Auto Group I, Inc.*, 2014 WL 6654270, at *11-*12 (W.D. Wash. Nov. 24, 2014) (certifying WCPA class where defendant sent mass text messages to consumers; "defendant's standardized conduct generally is sufficient to constitute a common nucleus of operative facts") (internal quotation and citation omitted).

22
    **2.    Occurring in trade or commerce.**

23
24
25
     The WCPA's second element clearly presents common issues. The WCPA defines "trade or commerce" as the "sale of assets or services, and any commerce directly or indirectly affecting the people of the state of Washington." RCW § 19.86.010(2). This is a binary standard: Amazon

26
27
---
[12] Indeed, where the "underlying facts regarding the defendant's conduct is undisputed, the court decides unfairness as a matter of law." *Greenberg*, 553 P.3d at 650.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1    either engaged in a "sale of … services [and/or] commerce directly or indirectly affecting the

2    people of … Washington," or it did not. The answer to that question can only be the same for every

3    class member. *See Ruiz Torres*, 835 F.3d at 1135 (plaintiffs could establish trade and commerce

4    element of WCPA claim by "proving the common questions"); *Reichert v. Keefe Commissary*

5    *Network, L.L.C.*, 331 F.R.D. 541, 556 (W.D. Wash. 2019) (commonality and predominance

6    satisfied for trade or commerce element where plaintiffs claimed that defendant's "practice of

7    unilaterally transferring inmates' funds to an activated card with substantial fees" violated WCPA).

8    ### 3.    Impacting the public interest.

9    The WCPA's public interest impact element is satisfied when the alleged unfair or

10   deceptive act "injured other persons." RCW 19.86.093. That element presents a common question:

11   whether Amazon injured Plaintiffs and other DPs by unfairly or deceptively using tips to covertly

12   reduce their base payments. The answer to that question will be the same for all class members.

13   *Dukes*, 564 U.S. at 350.

14   ### 4.    Injury.

15   The "injuries compensable under the CPA are relatively expansive." *Frias v. Asset*

16   *Foreclosure Servs., Inc.*, 334 P.3d 529, 538 (Wash. 2014). They "need not be great, or even

17   quantifiable." *Ambach v. French*, 216 P.3d 405, 407 (Wash. 2009); *see also Frias*, 334 P.3d at 538

18   ("Because the CPA addresses 'injuries' rather than 'damages,' quantifiable monetary loss is not

19   required."). For example, the failure to disclose certain work opportunities can constitute a class-

20   wide injury under the WCPA. *See Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1135-36 (9th

21   Cir. 2016) (whether defendant had a "common policy or practice of withholding information

22   pertaining to H-2A jobs from job-seekers and current employees" was a common question which

23   will "help to drive the resolution of the litigation"). So, too, can delay in payment or retention of

24   money belonging to another. *See Sorrel v. Eagle Healthcare, Inc.*, 38 P.3d 1024, 1029 (Wash.

25   App. 2022) (two-week delay in nursing home's refund of certain unearned charges to residents

26   was an "injury" under the WCPA). Here, Amazon deprived all the class members of money that it

27   led them to believe they would receive. None received restitution for that conduct until two years

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

after Amazon ended the challenged practice. Whether that constitutes an "injury" under the WCPA is a common question with a common answer. *See id.* at 1026.

### 5. Causation.

To show causation, Plaintiffs do not need to demonstrate that they or any particular class member relied on Amazon's misrepresentations or fell for Amazon's deception. *See Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 277 (Wash. 2011) ("we firmly reject[] the principle that reliance is necessarily an element" of a WCPA claim). Instead, Plaintiffs "must merely show that the 'injury complained of ... would not have happened' if not for defendant's violative acts." *Id.*, *quoting Indoor Billboard/Washington, Inc. v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 21 (Wash. 2007). That standard is one aptly suited for class resolution because the DPs' injuries arose from the same practice: Amazon's use of tips to offset its payments to the DPs, which it concealed for years. The nature of that practice "shifts the focus of the causation inquiry from what information each class member received to what the defendant 'allegedly concealed in light of what consumers reasonably expect,' a question capable of generating a common answer across the class without substantial individualized inquiries."[13] *Blough v. Sea Homes, Inc.*, 2014 WL 3694231, at *13 (W.D. Wash. Jul. 23, 2014), *quoting Morris v. Int'l Yogurt Co.*, 729 P.2d 33, 41 (Wash. 1986).

### III. Typicality and adequacy are both satisfied.

Rule 23(a)'s last two prerequisites—typicality and adequacy—evaluate whether the "plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prods., Inc. v. Windsor*, 521

---

[13] Furthermore, as previously noted, the WCPA's test for deceptive conduct is objective, *Mandatory Poster*, 398 P.3d at 1274, meaning it is irrelevant whether any particular DP saw or relied upon any specific representation by Amazon. *See In re Hyundai*, 926 F.3d at 539 (addressing predominance, "[w]hen misrepresentations are made as part of a nationwide, concerted marketing effort, it makes no difference … whether consumers encounter them in different guises."); *DZ Reserve*, 96 F.4th at 1236 (applying California law, "slight differences" in misleading advertised statements "do not defeat commonality under our 'common course of conduct' test").

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairwork.law

U.S. 591, 626 n.20 (1997). These elements "tend[] to merge." *Id.* In the Ninth Circuit, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Jaeger v. Zillow Group, Inc.*, 2024 WL 3924557, at *4 (W.D. Wash. Aug. 23, 2024), *quoting Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Adequacy concerns whether the representative will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine whether named plaintiffs will adequately represent a class, courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011), *quoting Hanlon*, 150 F.3d at 1020 (internal quotation marks omitted).

Plaintiffs are typical and adequate because they suffered the same injuries as the class members they seek to represent and have no conflict of interest. Each performed services for Amazon as a Flex driver at various times between 2017 and 2019. (Barrera-Perez Aff. [**Ex. 37**], ¶ 10 & Exhibit A). Each had tips diverted toward their hourly pay by Amazon. (*Id.* [**Ex. 37**] at Ex. A). Each has brought the same WCPA claim against Amazon that any class member could bring. Each will need to establish the same elements for liability as would any other class member. Further, Plaintiffs have no conflicts of interest because their success in this case would translate into success for the class in the form of monetary restitution, and the challenged practice has ended, so no class member can have a cognizable interest in "preserving" it.

The undersigned counsel are also adequate to represent the class. As set forth in their affidavits,[14] each has extensive experience litigating class action matters, including claims under the WCPA and other consumer protection laws. They also have considerable experience representing delivery drivers and litigating and resolving claims similar to those presented here, e.g., for failure to pay wages or tips. There is also no cognizable conflict between counsel and the

---

[14] *See* Affidavit of Brant Casavant [**Ex. A**]; Affidavit of Jennifer Rust Murray [**Ex. B**].

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1    class members generally. Plaintiffs thus submit that they are typical of the proposed class, and that

2    both they and their attorneys are adequate class representatives.

3    **IV.    Common issues predominate.**

4          Predominance "asks the court to make a global determination of whether common

5    questions prevail over individualized ones." *Ruiz Torres*, 835 F.3d at 1134. It assesses "whether

6    proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v.*

7    *Countrywide Home Loans, Inc*., 571 F.3d 935, 944 (9th Cir. 2009). "An individual question is one

8    'where members of a proposed class will need to present evidence that varies from member to

9    member,' while a common question is one where 'the same evidence will suffice for each member

10   to make a prima facie showing [or] the issue is susceptible to generalized, class-wide

11   proof.'" *Tyson Foods v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016), *quoting* 2 W. Rubenstein,

12   *Newberg on Class Actions* § 4:50, 196-97 (5th ed. 2012). "When considering whether common

13   issues predominate, the court should begin with 'the elements of the underlying cause of action.'"

14   *Reichert*, 331 F.R.D. at 553, *quoting Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804,

15   809 (2011). If "one or more of the central issues in the action are common to the class and can be

16   said to predominate, the action may be considered proper under Rule 23(b)(3) even though other

17   important matters will have to be tried separately, such as damages or some affirmative defenses

18   peculiar to some individual class members." *Tyson Foods*, 136 S. Ct. at 1045.

19         **1.    An unfair or deceptive act or practice.**

20         Common issues predominate as to the WCPA's first element because liability depends

21   upon Amazon's conduct, not that of any individual class member. To establish that Amazon acted

22   deceptively, for example, Plaintiffs need not prove that each specific class member saw a specific

23   communication or had a specific understanding about tips. Instead, Plaintiffs may establish class

24   liability if Amazon's conduct had the "capacity to deceive a substantial portion of the public."

25   *Rhodes v. Rains*, 381 P.3d 58, 63 (Wash. App. 2016). That is an inquiry common to every class

26   member. It is also one subject to the same objective standard of proof. *See DZ Reserve*, 96 F.4th

27   at 1235 ("Because materiality is an objective inquiry, differences in the … sophistication of the

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1    [individuals] in the class are irrelevant."); *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d

2    539, 560, 564 (9th Cir. 2019) (discussing how defendant's knowledge of a design defect was a

3    common issue that predominated over individual concerns); *Rhodes*, 381 P.3d 63 ("Neither intent

4    to deceive nor actual deception is required."). That proof includes, primarily, the statements and

5    representations Amazon made to DPs and the public concerning DP pay and tips—the same

6    representations upon which any class member would need to rely to pursue this claim individually.

7            Amazon may argue that common issues do not predominate because its representations

8    concerning DP pay varied over time and across regions. Any such argument would be meritless.

9    As the Ninth Circuit has long held—and recently reaffirmed—"[t]he class action mechanism

10    would be impotent if a defendant could escape much of his potential liability for fraud by simply

11    altering the wording or format of his misrepresentations across the class of victims." *DZ Reserve*,

12    96 F.4th at 1236, *quoting First Alliance*, 471 F.3d at 992. Here, Amazon's representations were

13    broadly uniform, centrally orchestrated, and changed little over time. (*See supra*, pp. 4-5, 7-10).

14    Any variance in their exact wording was, at best, minor and does not create the sort of

15    individualized issues that would preclude class treatment. *Compare*, *e.g.*, *In re Hyundai*, 926 F.3d

16    at 559 (affirming class certification where district court "found that the following undisputed

17    common questions predominated … (1) '[w]hether the fuel economy statements were in fact

18    inaccurate'; and (2) 'whether [the automakers] knew that their fuel economy statements were false

19    or misleading.'").

20            The common issue of whether Amazon's practices were unfair will also predominate. An

21    act can be unfair for purposes of a CPA claim without also having to be deceptive. *See Klem v.

22    Wash. Mut. Bank*, 295 P.3d 1179, 1187 (Wash. 2013). For instance, an act or practice is unfair if

23    it occurs "in violation of public interest." *Greenberg*, 553 P.3d at 640-41; *see also Klem*, 295 P.3d

24    at 1186 (an act is unfair if it "offends public policy as established by statutes or the common law,

25    is unethical, oppressive, or unscrupulous, among other things") (internal marks and quotation

26    omitted). Moreover, when there is no factual dispute as to what the parties did in a case, "whether

27    conduct constitutes an unfair or deceptive act can be decided … as a question of law." *Leingang*

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1   *v. Pierce Cty Med. Bureau, Inc.*, 930 P.2d 288, 297 (Wash. 1997). Here, as discussed, common
2   evidence—Amazon's documents and testimony—will establish that Amazon engaged in the
3   conduct at issue, while the common issue that will predominate at trial will be whether that conduct
4   is unfair under the WCPA. No individualized inquiries are necessary.

5           **2.      Trade or commerce and impacting public interest.**

6           The WCPA's second and third elements also depend on common issues and evidence that
7   predominate over individual concerns. As discussed with respect to commonality, Amazon's
8   evasive communications regarding DP pay either occurred in trade or commerce, or it did not;
9   there is no way that inquiry could vary among the class members. Likewise, the WCPA states that
10  the public interest element may be satisfied if the challenged act or practice "(1) [v]iolates a statute
11  that incorporates this chapter; (2) violates a statute that contains a specific legislative declaration
12  of public interest impact; or (3)(a) [i]njured other persons; (b) had the capacity to injure other
13  persons; or (c) has the capacity to injure other persons." RCW § 19.86.093. Any determination as
14  to that element will impact the class members generally because whether Amazon's conduct had
15  the "capacity" to injure others is a common question.

16          **3.      Causation.**

17          Causation is also an element demonstrable by common proof. As courts in Washington
18  have held, "causation may be presumed" where a WCPA claim "does not depend on any
19  affirmative misrepresentations, but rather, on a uniform omission" of material information.
20  *Whitman v. State Farm Life Ins. Co.*, 2021 WL 4264271, at *8 (W.D. Wash. Sept. 20, 2021); *see*
21  *also*, *e.g.*, *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, 242 F.R.D. 568, 573 (W.D.
22  Wash. 2007) (certifying WCPA claim because "[a] presumption of reliance is appropriate ... where
23  Plaintiffs have primarily alleged omissions") (emphasis omitted). This is precisely such a case:
24  Amazon withheld information about DP compensation while simultaneously providing misleading
25  (at best) or false (at worst) statements about how their pay was determined. Such a claim "shifts
26  the focus of the causation inquiry from what information each class member received to what the
27  defendant 'allegedly concealed in light of what consumers reasonably expect,' a question capable

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  of generating a common answer across the class without substantial individualized inquires." *Id.*,

2  *quoting Blough v. Shea Homes, Inc.*, 2014 WL 3694231, at \*13 (W.D. Wash. July 23, 2014).

3      Even under an affirmative misrepresentation analysis, causation may be determined on a

4  common basis. Where a "defendant has engaged in an unfair or deceptive act or practice, and there

5  has been an affirmative misrepresentation of fact, … there must be some demonstration of a causal

6  link between the misrepresentation and the plaintiff's injury." *Indoor Billboard/Washington, Inc.*

7  *v. Integra Telecom of Wash., Inc.*, 170 P.3d 10, 22 (Wash. 2007). Here, the "causal link" is class-

8  wide. Amazon made certain public guarantees concerning DP pay, including the "base pay" they

9  could expect to receive from Amazon and the manner in which they would receive tips. Amazon

10  did not live up to those guarantees. It also attempted to hide that fact from its DPs, its customers,

11  and the media. The injury arising from that conduct is the same for every class member, and

12  proving the link between the two does not require individualized inquiries because it establishes

13  on a class basis "that the 'injury complained of ... would not have happened' if not for [Amazon's]

14  violative acts." *Schnall*, 259 P.3d at 137, *quoting Indoor Billboard*, 170 P.3d 10.

15      The Ninth Circuit's opinion in *Owino v. CoreCivic, Inc.*, 60 F.4th 437 (9th Cir. 2022), is

16  instructive. That case involved claims for worker exploitation under federal and California law.

17  *See id.* at 441. One claim was that the defendant had misclassified certain workers as independent

18  contractors, thus depriving them of statutory wage protections. *Id.* at 447. On appeal, the defendant

19  challenged the district court's conclusion that the causal nexus between its conduct and the class

20  members' injuries could be decided on a class basis. *Id.* The Ninth Circuit rejected that argument

21  because it found a "clear line of causation between the alleged misclassification of detainee

22  employees as 'volunteers' and the deprivation of earnings they may have suffered as a consequence

23  of the violation of California wage and hour laws." *Id.* "If [defendant] did indeed misclassify these

24  participants as 'volunteers' … [it] would necessarily have failed to pay the minimum hourly wage

25  required by California law. Thus, any damages that the class members are owed necessarily

26  'stemmed from [defendant's] actions.'" *Id.*, *quoting Vaquero v. Ashley Furniture Indus., Inc.*, 824

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairwork.com

1  F.3d 1150, 1154 (9th Cir. 2016). The same rationale applies here: "but for" Amazon's conduct,

2  the class members would not have sustained any injury.

3  **V.    A class action is the superior means of adjudicating this dispute.**

4      Rule 23(b)(3) requires that a class action be "superior to other available methods for the

5  fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). The factors relevant to

6  this inquiry include: (A) the interest of members of the class in individually controlling the

7  prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning

8  the controversy already commenced by or against members of the class; (C) the desirability or

9  undesirability of concentrating the litigation of the claims in the particular forum; (D) the

10  difficulties likely to be encountered in the management of a class action. *Id.* All these

11  considerations support class certification here.

12      First, "it is unlikely that individual plaintiffs will challenge [Amazon's] practices," *Perez-*

13  *Farias v. Global Horizons, Inc.*, 2006 WL 2129295, at *14 (E.D. Wash. Jul. 28, 2006), given

14  that many are likely unaware that they have claims under the WCPA.[15] But "repeatedly litigating

15  the same disputes against the same defendants does not promote judicial economy," so it is

16  better—i.e., superior—to resolve as much of this dispute on a class basis as possible. *Id.* It is also

17  "unlikely that a significant proportion of the absent class members would have the ability and

18  desire to pursue individual … actions against" one of the largest corporations in the world

19  because many class members will "lack the time, resources, and legal sophistication to enforce

20  their [rights]." *In re Napster, Inc. Copyright Litig.*, 2005 WL 1287611, at *8 (N.D. Cal. Jul. 1,

21  2005).

22      Second, this is the first—and only—case against Amazon involving the legality of its DP

23  pay practices under the WCPA. While two other cases are also pending against Amazon in this

24

25

---

26  [15] Even if certain DPs wanted to pursue their claims individually, they could do so by opting out

27  following class certification.

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1  District on behalf of delivery drivers,[16] those cases concern claims for independent contractor

2  misclassification and various state wage law violations, not Amazon's unfair or deceptive acts or

3  practices concerning DP tips. The FTC proceeding has also concluded, so there is no risk of

4  competing or duplicative outcomes in that context.

5        Third, it is desirable to concentrate this litigation in this District. Amazon is a

6  Washington corporation and "Washington has a strong interest … in preventing its corporations

7  from engaging in unfair or deceptive trade practices in Washington or elsewhere." *Coe v. Philips*

8  *Oral Healthcare, Inc.*, 2014 WL 5162912, at *3 (W.D. Wash. Oct. 14, 2014). Indeed, the WCPA

9  was enacted expressly to "complement the body of federal law governing restraints of trade,

10  unfair competition, and unfair, deceptive, and fraudulent acts or practices in order to protect the

11  public and foster fair and honest competition." RCW 19.86.920. That is exactly what the FTC

12  encouraged in its public comments concerning this practice[17] and what Plaintiffs are doing here.

13  There is no better forum for this dispute than Amazon's home state, Washington.

14        Fourth, class certification would not present any unusual difficulties. As discussed, this

15  case raises a host of common issues all of which depend upon common evidence and implicate a

16  single, largely undisputed practice. As in other cases, superiority is satisfied because "this action

17  might resolve an alleged controversy affecting tens of thousands of otherwise unknowing …

18  consumers. Without class certification, other … consumers may eventually threaten to burden

19  the courts, should the named Plaintiffs prevail on their claims. With the possibility of recovering

20  attorney's fees and treble damages, the possibility of individual lawsuits is probable." *Grays*

21

22  [16] *Rittmann v. Amazon.com, Inc.*, Case No. 2:16-cv-01544-JCC (W.D. Wash., filed Oct. 4, 2016);
23  *Waithaka v. Amazon.com, Inc.*, Case No. 2:19-cv-01320-JCC (W.D. Wash., filed Aug. 20, 2019).

24  [17] (*See* FTC Analysis [**Ex. 1**], p. 8912-13) ("Clear rules and the threat of substantial civil
25  penalties can deter wrongdoing. The authors of this statement do not always agree on the proper
   scope of rulemaking and penalty authority, but we do agree here. Authorizing the FTC to assess
26  penalties to deter similar lawbreaking will help gig workers and make labor markets more
   efficient."; "I also agree with Acting Chairwoman Slaughter and Commissioner Phillips that
27  preying on workers justifies punitive measures far beyond the restitution provided here.").

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 23

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 ● FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 ● FAX 617.488.2261
www.fairwork.com

1    *Harbor Adventist Christian School v. Carrier Corp.*, 242 F.R.D. 568, 574 (W.D. Wash. 2007). A

2    class action is the better alternative.

3                                    **CONCLUSION**

4          For the reasons set forth herein, Plaintiffs request that the Court grant this Motion and:

5          1.      certify the following class pursuant to Fed. R. Civ. P. 23:

6                  All individuals who performed tipped delivery services using Amazon
7                  Flex for Defendants Amazon.com, Inc. and Amazon Logistics, Inc.,
                   anywhere in the United States between January 2017 and August
8                  2019;

9          2.      appoint Christopher Cain, Jose Grinan, Kimberly Halo, Kelly Kimmey, Juma
10   Lawson, Sharon Paschal, and Philip Sullivan as class representatives;

11         3.      appoint Hillary Schwab, Brant Casavant, and Brook Lane of Fair Work, P.C. and
12   Beth Terrell, Toby Marshall, and Jennifer Rust Murray of the Terrell Marshall Law
     Group PLLC as class counsel.

13

14                          **CERTIFICATE OF CONFERENCE**

15         Pursuant to this Court's Standing Order for All Civil Cases, I certify that the parties

16   conferred by telephone and e-mail concerning this motion and the relief requested herein. As a

17   result of that conferral process, Defendants have stated that they intend to oppose.

18                                  By:    /s/ Brant Casavant
19                                         Brant Casavant

20                     **LOCAL RULE 7(e)(4) CERTIFICATION**

21         I certify that this memorandum contains 7,791 words, fewer than the 8,200 words

22   authorized by this Court on January 16, 2025, in compliance with the Local Civil Rules.

23

24                                  By:    /s/ Brant Casavant
                                           Brant Casavant
25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

1    RESPECTFULLY SUBMITTED AND DATED this 21st day of January, 2025.

2                                    By:  /s/ Brant Casavant
3                                    Hillary Schwab, Admitted *Pro Hac Vice*
                                     Email: hillary@fairworklaw.com
4                                    Brant Casavant, Admitted *Pro Hac Vice*
5                                    Email: brant@fairworklaw.com
                                     Brook Lane, Admitted *Pro Hac Vice*
6                                    Email: brook@fairworklaw.com
7                                    FAIR WORK, P.C.
                                     192 South Street, Suite 450
8                                    Boston, Massachusetts 02111
9                                    Telephone: (617) 607-3260
                                     Facsimile: (617) 488-2261
10

11                                   By:  /s/ Jennifer Rust Murray
                                     Beth E. Terrell, WSBA #26759
12                                   Email: bterrell@terrellmarshall.com
13                                   Toby J. Marshall, WSBA #32726
                                     Email:  tmarshall@terrellmarshall.com
14                                   Jennifer Rust Murray, WSBA #36983
15                                   Email: jmurray@terrellmarshall.com
                                     TERRELL MARSHALL LAW GROUP PLLC
16                                   936 North 34th Street, Suite 300
17                                   Seattle, Washington 98103
                                     Telephone: (206) 816-6603
18                                   Facsimile: (206) 319-5450

19

20

21

22

23

24

25

26

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
FAIR WORK, P.C.
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND
MEMORANDUM IN SUPPORT THEREOF - 25

1

## <u>CERTIFICATE OF SERVICE</u>

2        I hereby certify that on January 21, 2025, I electronically filed the foregoing with the

3  Clerk of the Court using the CM/ECF system which will send notification of such filing to

4  counsel for all registered parties in this matter, and that I have mailed by U.S. Postal Service a

5  true copy of this document to all non-registered participants.

6

7                                    By:    /s/ Brant Casavant
                                           Brant Casavant
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300, Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com
**FAIR WORK, P.C.**
192 South Street, Suite 450, Boston, MA 02111
TEL. 617.607.3260 • FAX 617.488.2261
www.fairworklaw.com